IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| **DESIREE M. SCHMITT**, individually and on behalf of all others similarly situated,<br>716 College Avenue<br>Cleveland, OH 44113<br><br>  Plaintiff,<br><br>  v.<br><br>**SECURITY NATIONAL SERVICING CORPORATION d.b.a. SN SERVICING CORPORATION**,<br>c/o The Prentice-Hall Corporation System, Inc.<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215<br><br>  Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Desiree M. Schmitt ("Plaintiff"), individually and on behalf of all others similarly situated, by and through counsel, brings this action against Defendant Security National Servicing Corporation d.b.a. SN Servicing Corporation ("Defendant" or "SN"), and for her Class Action Complaint, states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is a natural person residing in Cuyahoga County, Ohio.

2. SN is a business incorporated under the laws of the State of Alaska which does business in Ohio as a licensed foreign corporation. SN's registered agent in Ohio is The Prentice Hall Corporation System, Inc., 50 West Broad Street, Suite 1330, Columbus, OH 43215.

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as one of Plaintiff's causes of action arises under federal law, specifically the Fair Debt Collection Practices Act ("FDCPA")—codified at 15 U.S.C. §§ 1692, *et seq*. This Court has

supplemental jurisdiction over Plaintiff's remaining causes of action, pursuant to 28 U.S.C. § 1367.

4. Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## STATEMENT OF FACTS

### *Plaintiff's and Class Members' Loans*

5. SN is the servicer of Plaintiff's and Class (defined *infra*) members' notes, and mortgages on real property that secure those notes (collectively, the "loans").

6. As a mortgage loan servicer, SN—on behalf of the assignees, investors, and/or owners to whom payments towards the loans are ultimately due—regularly attempts to secure payments on customers' mortgage loans, including Plaintiff's and Class members' loans.

7. On information and belief, Plaintiff's and Class members' loans contain substantially similar language, as they were drafted using standardized templates, specifically, the "Uniform Instruments" required by the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") and otherwise commonly used by lenders in the origination of mortgages.

8. When SN acquired the servicing rights to Plaintiff's loan and FDCPA Subclass (defined *infra*) members' loans, Plaintiff and FDCPA Subclass members were in default of their obligations thereunder.

9. SN is a "debt collector" as defined by 15 U.S.C. § 1692a(6), as it regularly engages, or attempts to engage, in the collection of "debts" for which the primary purpose is for personal, family, or household use, including Plaintiff's and Class members' loans.

10. SN, is a mortgage servicer, as defined by R.C.1322.01(AA), as it is an entity that "for itself or on behalf of the holder of a mortgage loan, holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement including, when applicable, the receipt of funds from the mortgagor to be held in escrow for payment of real estate taxes and insurance premiums and the distribution of such funds to the taxing authority and insurance company."

11. SN, as a mortgage servicer, is required to be and is registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued SN certificates of registration, License Nos. RM.501101.000 and RM.501101.001-BR.

12. Plaintiff and each member of the Ohio Subclass, defined *infra*, is a "buyer" as defined by R.C.1322.01(H), as each is an individual whose loan is serviced by a mortgage servicer, SN.

13. Pursuant to the terms of Plaintiff's and Class members' loans, Plaintiff and Class members are (or were) required to make periodic, monthly installment payments on their loans until the entire balance is paid in full. *See*, note for Plaintiff's loan ("Plaintiff's Note"), ¶ 3, attached hereto as <u>Exhibit 1</u>. Plaintiff's and Class members' loans specifically refer to these periodic installment payments as "monthly payments." *See, e.g.*, Plaintiff's Note, ¶¶ 3, 7.

14. Plaintiff's and Class members' loans further provide that if any "monthly payment" is not paid within a certain number of days after it is due, Plaintiff and Class members will be required to pay a "late charge." *See*, Plaintiff's Note, ¶ 7(A).

15. Pursuant to the terms of Plaintiff's and Class members' loans, if Plaintiff and Class members fail to timely make each required "monthly payment," they will be in default on

their loans. *See*, Plaintiff's Note, ¶ 6(B). Plaintiff's and Class members' loans further provide that if they are in default, the "Note Holder"—*e.g.*, the current owner of the loan, or the servicer of the loan (on behalf of the current owner of the loan)—may send them written notice that if they do not pay the delinquent balance of their respective loans by a certain date, the Note Holder may require them to immediately pay the full balance of their respective loans—*i.e.*, Plaintiff's and Class members' loans would be "accelerated." *See*, Plaintiff's Note, ¶ 7(C).

16. Based on the plain terms of Plaintiff's and Class members' loans, Plaintiff and Class members are (or were) no longer required to make "monthly payments" on their loans after acceleration. Indeed, acceleration, by definition, requires a borrower to pay the *entire balance* of a loan *immediately*, instead of in preset installment amounts made at regularly scheduled and predetermined intervals. *Compare*, Plaintiff's Note, ¶ 7(C) (describing Plaintiff's payment obligations after acceleration) *with* Plaintiff's Note, ¶ 3 (describing Plaintiff's "monthly payment" obligations).

17. As noted above, the terms of Plaintiff's and Class members' loans establish that the condition precedent to the imposition of "late charges" is the failure to comply with their "monthly payment" obligations. *See*, Plaintiff's Note, ¶ 7(A). However, after acceleration, that condition precedent can no longer occur because Plaintiff's and Class members' obligation to make "monthly payments" ceases. Therefore, Plaintiff's and Class members' loans *do not* authorize the imposition of "late charges" after acceleration.

### *SN's Improper Imposition of Late Charges*

18. At some point during the time relevant to this action, Plaintiff's and Class members' loans were each in default due to Plaintiff's and Class members' failure to timely remit periodic "monthly payments" on their loans. *See*, Plaintiff's Note, ¶ 7(B).

19. In compliance with the terms of Plaintiff's and Class members' loans, the assignees, investors, owners and/or servicers of the loans sent notices of default to Plaintiff and Class members stating that if Plaintiff and Class members did not pay all overdue amounts, they would require Plaintiff and Class members to immediately pay the full amount of unpaid principal and all the interest owed on such amount—*i.e.*, Plaintiff's and Class members' loans would be "accelerated." *See*, Plaintiff's Note, ¶ 7(C).

20. After receiving the notices of default, Plaintiff and Class members did not remit further payments on their loans. As a result, the assignees, investors, owners and/or servicers of the loans accelerated Plaintiff's and Class members' loans. *See*, Plaintiff's Note, ¶ 7(C).

21. For the reasons set forth *supra*, at the time Plaintiff's and Class members' loans were accelerated, their obligation to remit timely periodic "monthly payments" on their loans ceased, as they were instead required to *immediately* pay the *entire balance* of their loans. *See*, Plaintiff's Note, ¶ 7(C).

22. Since Plaintiff and Class members no longer had the obligation to remit timely periodic "monthly payments" on their loans, the condition precedent relative to the imposition of "late charges"—*i.e.*, the failure to timely remit "monthly payments"—did not, and could not, occur.

23. Nevertheless, SN—acting on its own behalf, and on behalf of the assignees, investors, and/or owners of such loans—continued to impose "late charges" against Plaintiff and Class members (the "Improper Late Fees"). For the reasons stated, *supra*, these Improper Late Fees were not authorized by the terms of the loans or otherwise by law.

24. SN's imposition of Improper Late Fees is part of a pattern and practice of behavior.

*The Harm to Plaintiff and Class Members*

25. SN's actions described herein harmed Plaintiff and Class members in several ways, as specified *infra*.

26. SN, acting on its own behalf, or on behalf of the assignees, investors, and/or owners of Plaintiff's and Class members' loans, breached the terms of the loans by imposing Improper Late Fees. SN, acting on its own behalf, or on behalf of the assignees, investors, and/or owners of such loans, has asserted, and will continue to assert, that these Improper Late Fees are amounts due and owing pursuant to the terms of Plaintiff's and Class members' loans, and that these debts are valid. As such, SN has collected, and will continue to collect (or attempt to collect) these Improper Late Fees through mortgage servicing, debt collection activities, foreclosures (and deficiency judgments), claims in bankruptcy proceedings, etc.

27. In fact, because of the claims for Improper Late Fees, Plaintiff and some Class members reasonably believed that they were required to pay the Improper Late Fees, and, as a result, paid those Improper Late Fees (either directly or indirectly) as part of reinstating or refinancing their loans, through loan modifications, or because of foreclosure or bankruptcy proceedings.

**FACTS RELEVANT TO PLAINTIFF**

28. On September 17, 2004, Plaintiff entered into a mortgage loan with non-party Republic Bank—which has since relinquished any right to Plaintiff's loan—which was secured by a mortgage on Plaintiff's principal place of residence. *See*, Plaintiff's Note, ¶ 1; *see also*, a copy of Plaintiff's mortgage, attached as **Exhibit 2**.

29.     Plaintiff's loan was subsequently modified through a "LOAN MODIFICATION AGREEMENT with DEFERMENT [*sic*]," effective September 1, 2012 ("Plaintiff's Modification"). *See*, copy of Plaintiff's Modification, attached as **Exhibit 3**.

30.     SN currently services Plaintiff's loan on behalf of the purported assignee of Plaintiff's loan—non-party FT 171 LLC ("FT 171")—pursuant to a contractual agreement between SN and FT 171.

31.     Pursuant to the terms of Plaintiff's loan, as modified, Plaintiff was required to make periodic, "monthly payments" of principal and interest in the amount of $996.42 until the entire balance was paid in full. *See*, Plaintiff's Note, ¶ 3; *see also*, Plaintiff's Modification, ¶ 4. Each of Plaintiff's "monthly payments" was due on the first day of each month beginning on November 1, 2004. *See*, Plaintiff's Note, ¶ 3(B); *see also*, Plaintiff's Modification, ¶ 4.

32.     Plaintiff's loan further provided that if any "monthly payment" was not paid within 15 days after it is due, Plaintiff would be required to pay a "late charge" in the amount of 5.000% of the overdue "monthly payment" amount—that is, $49.82, as adjusted per the adjustable interest rate terms of Plaintiff's Note. *See*, Plaintiff's Note, ¶ 7(A).

33.     Pursuant to the terms of Plaintiff's loan, if Plaintiff failed to timely make each required "monthly payment," she would be in default on her loan. *See*, Plaintiff's Note, ¶ 7(B). Plaintiff's loan further provided that if she were in default, the Note Holder may send her written notice that if she did not pay the delinquent balance by a certain date, her loan would be accelerated. *See*, Plaintiff's Note, ¶ 7(C).

34.     Plaintiff failed to make her "monthly payments" on her loan in March 2014 and thereafter. As such, Plaintiff was in default on her loan as of March 1, 2014. *See*, Plaintiff's Note, ¶ 7(B).

35. The assignee, investor, owner and/or servicer of Plaintiff's loan subsequently sent Plaintiff a letter stating that Plaintiff was in default on her loan, and that she was required to pay the delinquent balance, plus "late charges," by a specified "Cure Date" (the "Default Letter").

36. The Default Letter also stated that Plaintiff's failure to pay the delinquent balance, plus "late charges," by the Cure Date may result in acceleration of Plaintiff's loan and the commencement of foreclosure proceedings.

37. Plaintiff did not make any further payments on her loan after receiving the Default Letter, and SN—on behalf of the assignee, investor, and/or owner of Plaintiff's loan—accelerated Plaintiff's loan.

38. On or about August 2, 2017, the previous servicer of Plaintiff's loan—non-party Nationstar Mortgage LLC—filed a foreclosure action against Plaintiff on behalf of the previous assignee of Plaintiff's loan—non-party FCO Resi REO LLC—in the Cuyahoga Court of Common Pleas captioned *FCO Resi REO, LLC v. Desiree M. Schmitt a.k.a. Desiree Schmitt a.k.a. Desiree Michielle Schmitt, et al.*, Case No. CV 17 883909 (the "Foreclosure Action").

39. Based on the plain terms of Plaintiff's loan, Plaintiff was no longer required to make "monthly payments" on her loan after it was accelerated. *Compare*, Plaintiff's Note, ¶ 7(C) (describing Plaintiff's payment obligations after acceleration) *with* Plaintiff's Note, ¶ 3 (describing Plaintiff's "monthly payment" obligations).

40. SN obtained servicing rights to Plaintiff's loan effective September 1, 2017 when Plaintiff was still in default and the Foreclosure Action remained pending.  Therefore, when SN obtained servicing rights to Plaintiff's loan, Plaintiff had no obligation to make "monthly payments" until the default was cured.

41. As noted above, Plaintiff's loan only authorized the imposition of "late charges" in the event that Plaintiff failed to make a required "monthly payment." *See*, Plaintiff's Note, ¶ 7(A). Because Plaintiff's obligation to make "monthly payments" on her loan ceased after it was accelerated, SN—acting on behalf of FT 171—had no authority to impose "late charges" against Plaintiff.

42. Accordingly, SN—acting on behalf of FT 171—had no obligation or right to collect "monthly payments" from Plaintiff relative to her loan upon obtaining the servicing rights.

43. The court in the Foreclosure Action entered a judgment entry adopting the magistrate's decision granting judgment against Plaintiff on July 15, 2020 (the "Judgment").

44. On or about November 6, 2020, Plaintiff filed a petition for relief under Title 11, Chapter 13 of the United States Code in the United States Bankruptcy Court of the Northern District of Ohio which was assigned case number 20-14932-aih (the "Bankruptcy").

45. On January 11, 2021, FT 171, through SN, filed a Proof of Claim in the Bankruptcy (the "POC"). *See*, copy of the POC, in relevant part, attached as **Exhibit 4**.

46. Per the POC, upon obtaining servicing rights to Plaintiff's loan, SN began to impose a "Late Charge Assessment" in the amount of $49.82 on the 17th day of each month from October 2017 through October 2020—that is, thirty-four (34) Improper Late Fees totaling $1,693.88.[1] *See*, **Exhibit 4**.

47. SN demanded payment of the thirty-six (36) Improper Late Fees totaling $1,793.52 from Plaintiff through the POC. *See*, **Exhibit 4**.

---

[1] SN also imposed and credited two additional Improper Late Fees in March and April, 2020. *See*, **Exhibit 4**.

48. During the pendency of the Bankruptcy, Plaintiff was required to remit payments to a bankruptcy trustee, who then used those funds to pay Plaintiff's creditors (and/or their representatives), including SN.

49. In addition to demanding payment of these Improper Late Fees through the POC, SN demanded payment of these fees each month through periodic billing statements it sent to Plaintiff.

50. Based on the plain terms of Plaintiff's loan, since SN obtained servicing rights to Plaintiff's loan when it was in default, and it had remained in default as of the POC and thereafter, SN had no authority to impose any of these Improper Late Fees.

## CLASS ACTION ALLEGATIONS

51. **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals and entities (the "Class"), defined as follows:

> All loan borrowers in United States, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property, (2) whose mortgage loans did not provide for the imposition of late fees or charges after acceleration of their mortgage loans, (3) against whom late fees or charges were imposed or demanded after acceleration of their mortgage loans, and (4) whose mortgage loans were serviced by SN at any point after their mortgage loans were accelerated.

> Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

52. **FDCPA Subclass Definition**: Plaintiff also brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals and entities (the "FDCPA Subclass"), defined as follows:

> All loan borrowers in United States, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property to which SN acquired servicing rights after the loans were in default, (2) whose mortgage loans did not provide for the imposition of late fees or charges after acceleration of their mortgage loans, (3) against whom late fees or charges were imposed or demanded after acceleration of their mortgage loans, (4) whose mortgage loans were serviced by SN at any point after their mortgage loans were accelerated.

> Excluded from the FDCPA Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the FDCPA Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

53. **Ohio Subclass Definition**: Plaintiff also brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals and entities (the "Ohio Subclass"), defined as follows:

> All loan borrowers in United States, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property located in the State of Ohio, (2) whose mortgage loans did not provide for the imposition of late fees or charges after acceleration of their mortgage loans, (3) against whom late fees or charges were imposed or demanded after acceleration of their mortgage loans, and (4) whose mortgage loans were serviced by SN at any point after their mortgage loans were accelerated.

> Excluded from the Ohio Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any

entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Ohio Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

54. **Numerosity and Ascertainability**: Upon information and belief, the Class, and all related Subclasses, are comprised of more than forty (40) members, such that the Class, and all related Subclasses, are so numerous that joinder of all members is impractical. This conclusion is reasonable because As of December 31, 2020, the SN servicing portfolio totals $4.3 billion and 32,775 loans, and consists of third-party servicing (88%), non-agency RMBS transactions (7%), and FHA/VA (4%)."[2] Moreover, SN specializes in "re-performing seriously delinquent loans" and a "substantial portion" of its servicing portfolio is "in under-performing and non-performing residential mortgage loans",[3] so it can be reasonably expected that a significant portion of the loans it services are or were in default and were in default at the time SN obtained servicing rights to them. While the exact number of members in the Class is presently unknown and can only be ascertained through discovery, Class members can easily be identified through SN's records or by other means.

55. **Commonality and Predominance:** There are questions of law and fact common to the proposed Class that predominate over any individual questions. Simply put, Defendant imposed Improper Late Fees against Plaintiff and Class members, and, as a result, Plaintiff and Class members were harmed as a result.

---

[2] *See*, "Fitch Assigns U.S. RMBS Servicer Ratings to SN Servicing Corp", https://www.fitchratings.com/research/structured-finance/fitch-assigns-us-rmbs-servicer-ratings-to-sn-servicing-corp-10-05-2021 (last accessed May 25, 2021).
[3] *See*, "About Us", snsc.com/About.aspx (last accessed May 25, 2021).

56. **Typicality**: Plaintiff's claims are typical of the claims of the Class and each related Subclass. On information and belief, Plaintiff's and Class members' loans contain substantially similar language, as they were drafted using standardized templates or uniform instruments common to all loans that are intended or planned to be assigned to, or subsequently owned by, government sponsored entities such as Fannie Mae or Freddie Mac, or contain substantially similar language to such documents. As such, Plaintiff and all members of the Class were subjected to and affected by a uniform course of conduct; specifically, Defendant's imposition of Improper Late Fees.

57. **Adequacy**: Plaintiff will adequately represent the interests of the Class and does not have adverse interests to the Class. Plaintiff's counsel has extensive experience litigating consumer class actions.

58. **Superiority**: A class action is the superior method for the quick and efficient adjudication of this controversy. If individual Class members prosecuted separate actions it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct. Moreover, Defendant has acted on grounds generally applicable to the Class as a whole, making final declaratory and injunctive relief appropriate.

## COUNT I
**Declaratory Judgment**
**(28 U.S.C. §§ 2201, *et seq.*)**
**(On behalf of Plaintiff and the Class)**

59. Plaintiff repeats and realleges paragraphs 1 through 58 with the same force and effect as though fully set forth herein.

60. At all relevant times, there was in effect the Declaratory Judgment Act ("DJA"), 28 U.S.C. §2201(a), which states, in relevant part:

> In a case of actual controversy within its jurisdiction…any court of
> the United States, upon the filing of an appropriate pleading, may

declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

61. Plaintiff, individually, and on behalf of the Class, seeks an order declaring that Plaintiff's and Class members' mortgage loans do *not* authorize the imposition of late fees after acceleration.

62. The controversies presented in this case are definite and concrete and affect the adverse legal interests of the parties. Plaintiff and Class members contend that, pursuant to the terms of their loans, SN is legally unable to impose late fees after acceleration. In contrast, SN has repeatedly contended that it may legally impose Improper Late Fees. Accordingly, this case will determine the legal scope of SN's obligations to Plaintiff and Class members.

63. There is an actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment because SN has imposed, and will continue to impose, Improper Late Fees. SN has sent Plaintiff and Class members payoff statements and monthly statements indicating its intent to collect these amounts and has sought to collect these amounts through foreclosure proceedings, bankruptcy proceedings, and through other methods. Notwithstanding SN's attempt to collect these Improper Late Fees, Plaintiff and members of the Class assert that they have no legal obligation to pay them because they are unauthorized pursuant to the terms of their loans.

64. If the Court were to deny Plaintiff's and Class members' request for declaratory relief, this controversy will continue to exist, as Defendant will continue to attempt to collect Improper Late Fees—whether through reinstatement, refinancing, loan modifications, foreclosure, during bankruptcy proceedings, etc.—and Plaintiff and Class members will continue to assert that these amounts are unauthorized pursuant to the terms of their loans. As such, the

resolution of this controversy is contingent upon the declaration requested herein, and because Defendant refuses to fulfill its legal obligations to Plaintiff and the Class.

65. Based on the foregoing facts, the Court should declare the rights and other legal remedies pursuant to the terms of Plaintiff's and Class members' loans.

**COUNT II**
**VIOLATION OF THE FDCPA, 15 U.S.C. § 1692(f)**
**(On behalf of Plaintiff and the FDCPA Subclass)**

66. Plaintiff repeats and realleges paragraphs 1 through 58 with the same force and effect as though fully set forth herein.

67. The FDCPA makes it an illegal, "unfair practice" for a debt collector to undertake "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

68. "The [FDCPA] is an extraordinarily broad statute and must be construed accordingly" so it would be anomalous to conclude that the collection of "any amount" fails to encompass the Improper Late Fees. *See, Stratton v. Portfolio Recovery Assocs, LLC*, 770 F.3d 443, 449 (6th Cir. 2014) (internal citations omitted).

69. As set forth above, the Improper Late Fees that SN has imposed against and collected from Plaintiff and FDCPA Subclass members are not authorized by the terms of their loans or otherwise by law.

70. Since the Improper Late Fees imposed by SN are not authorized by the contract or any provision of law, SN's collection (or attempted collection) thereof violates 15 U.S.C. § 1692f.

71. As a result of SN's actions, SN is liable to Plaintiff and FDCPA Subclass members for actual damages, statutory damages, costs, and attorneys' fees. 15 U.S.C. § 1692k.

## COUNT III
### VIOLATION OF THE RMLA, R.C. 1322.01, *et seq.*
### (On behalf of Plaintiff and the Ohio Subclass)

72. Plaintiff repeats and realleges paragraphs 1 through 58 with the same force and effect as though fully set forth herein.

73. "No person ... shall act as a ... mortgage servicer ... without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a ... mortgage servicer ... in this state." R.C. 1322.07(A).

74. SN, as a mortgage servicer, is required to be and is registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

75. SN's conduct, in imposing and collecting the Improper Late Fees, is in violation of R.C. 1322.40(C) as it is conduct that constitutes improper, fraudulent, or dishonest dealings.

76. SN's conduct caused Plaintiff and Ohio Subclass members to suffer actual damages, as further described, *supra*.

77. As a result of SN's conduct, SN is liable to Plaintiff and Ohio Subclass members for actual damages, as further described, *supra*, reasonable attorneys' fees and costs incurred in connection with this action, and punitive damages. R.C. 1322.52.

78. A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and:

> (3) Act with reasonable skill, care, and diligence; [and]

    (4) Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan[.]

R.C. 1322.45(A).

79. A registrant, licensee, or person required to be registered or licensed under R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

80. SN's conduct, in imposing and collecting the Improper Late Fees, is in violation of R.C. 1322.45(A)(3)-(4).

81. As a result of SN's conduct, SN is liable to Plaintiff and Ohio Subclass members for actual damages, as further described, *supra*, reasonable attorneys' fees and costs incurred in connection with this action, and punitive damages. R.C. 1322.45(D).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Desiree M. Schmitt, individually, and on behalf of all others similarly situated, prays for an order as follows:

  A. Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class (and all related Subclasses) defined herein;

  B. Designating Plaintiff as Representative of the Class (and all related Subclasses) and her undersigned counsel as Class Counsel;

  C. Entering judgment in favor of Plaintiff and the Class (and all related Subclasses) and against Defendant;

  D. Declaring that Defendant is legally prohibited from imposing late fees relative to Plaintiff's and Class members' loans after acceleration;

  E. Awarding Plaintiff and FDCPA Subclass members their actual damages and statutory damages as allowed under the FDCPA;

  F. Awarding Plaintiff and Ohio Subclass members their actual damages as allowed under the RMLA;

  G. Awarding Plaintiff and Ohio Subclass members punitive damages as allowed under the RMLA;

  H. Awarding Plaintiff, the Class, and all related Subclasses attorneys' fees and costs; and,

  I. Granting all such further and other relief as this Court deems just and appropriate.

Dated: June 15, 2021     Respectfully submitted,

           /s/ Marc E. Dann
           Marc E. Dann (0039425)
           mdann@dannlaw.com
           Daniel M. Solar (0085632)
           dsolar@dannlaw.com
           Brian D. Flick(0081605)
           bflick@dannlaw.com
           DANNLAW
           P.O. Box 6031040
           Cleveland, OH 44103
           Telephone: (216) 373-0539
           notices@dannlaw.com

           Thomas A. Zimmerman, Jr. (*pro hac vice* anticipated)
           tom@attorneyzim.com
           Matthew C. De Re (*pro hac vice* anticipated)
           matt@attorneyzim.com
           ZIMMERMAN LAW OFFICES, P.C.
           77 W. Washington Street, Suite 1220
           Chicago, Illinois 60602
           Telephone: (312) 440-0020

*Counsel for Plaintiff Desiree M. Schmitt and the Putative Class*

**JURY DEMAND**

Plaintiff Desiree M. Schmitt hereby respectfully demands a trial by jury on all such claims that may be so tried.

<u>/s/ Marc E. Dann</u>
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
DANNLAW
*Counsel for Plaintiff Desiree M. Schmitt and the Putative Class*