**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DESIREE M. SCHMITT, *individually and on behalf of all others similarly situated*, | ) ) ) ) | CASE NO. 1:21-cv-01188 JUDGE DAVID A. RUIZ |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| SECURITY NATIONAL SERVICING CORPORATION, *doing business as SN Servicing Corporation*, | ) ) ) ) ) | |
| Defendant. | ) | |

This matter is before the Court upon the Defendant's Motion to Dismiss Plaintiff's

Complaint. (R. 16). For the following reasons, the Court GRANTS Defendant's Motion.

### I. Facts

#### A. The Parties

Plaintiff, Desiree M. Schmitt, is a person who lives in Cuyahoga County, Ohio. (R. 1,

PageID# 1 ¶ 1). As explained in more detail below, this action involves a mortgage loan that was

secured by Plaintiff's real property located in Cleveland, Ohio. (*Id*., PageID# 6 ¶ 28; R. 1-3,

PageID# 25).

Defendant, Security National Servicing Corporation (Defendant or SNSC), is a mortgage loan servicer incorporated under the laws of Alaska and doing business in Ohio as a licensed foreign corporation. (R. 1, PageID# 1 ¶ 2). Defendant services the mortgage loan at issue in this case. (*Id.*, PageID# 2 ¶ 5).

### B. Plaintiff's Loan and Foreclosure

On September 17, 2004, Plaintiff executed a "Fixed/Adjustable Rate Note" (the Note) in favor of non-party Republic Bank in the amount of $198,000. (*Id.*, PageID# 6 ¶ 28; R. 1-3, PageID# 25). The Note was secured by a Mortgage (together with the Note, the Loan), executed on the same date, which was recorded against Plaintiff's residence in Cleveland. (R. 1, PageID# 6 ¶ 28; R. 1-3, PageID# 25; R. 1-4, PageID# 31). Pursuant to the terms of the Loan, Plaintiff was required to make a monthly payment of $1,139.57 on the first day of each month, beginning on November 1, 2005. (R. 1-3, PageID# 25). After entering into a Loan Modification Agreement with Deferment (the Modification) in August 2012, Plaintiff's monthly payments decreased to $996.42, beginning on October 1, 2012. (R. 1, PageID# 7 ¶ 29; R. 1-5, PageID# 48–50, 52).

In addition to providing for Plaintiff's required monthly payments, the Loan and Modification also contained terms governing Plaintiff's repayment of the Loan. (R. 1-3; R 1-4; R 1-5, PageID# 51). As relevant here, the Loan provided that if Plaintiff failed to remit the full amount of any monthly payment within fifteen calendar days of its due date, there would be a 5.000% late charge on the overdue payment and Plaintiff would be in default on the Loan. (R. 1, PageID# 7 ¶¶ 32–33; R. 1-3, PageID# 27). Moreover, the Loan had an "acceleration provision," meaning that if Plaintiff defaulted, the holder of the Note could send Plaintiff a written notice explaining that if Plaintiff did not pay the overdue amount by a certain date, then Plaintiff may

2

be required to "pay immediately" the full amount of principal and interest owed on the Loan. (R. 1, PageID# 7 ¶ 33; R 1-3, PageID# 27).

In March 2014, Schmitt failed to make her monthly payment and was in default as a result. (R. 1, PageID# 7 ¶ 34). After Plaintiff defaulted on the Loan, an entity—the Complaint is unsure as to whether it was the "assignee, investor, owner and/or servicer" of the Loan—sent Plaintiff a letter explaining that if Plaintiff failed to pay the overdue balance on her Loan by a specific date, Plaintiff's loan may be accelerated and foreclosure proceedings may begin. (*Id*., PageID# 8 ¶¶ 35–36). Schmitt admits that she did not make any further payments after receiving this letter. (*Id*. ¶ 37).

Plaintiff alleges that on August 2, 2017, non-party previous Loan servicer Nationstar Mortgage LLC filed a foreclosure action against Plaintiff in the Cuyahoga County Court of Common Pleas. (*Id*. ¶ 38). Following the commencement of the foreclosure action, Defendant took over as the servicer of Plaintiff's Loan, effective September 1, 2017, pursuant to a contractual agreement with the then-assignee of the Loan. (*Id*., PageID# 7–8 ¶¶ 30, 40). Plaintiff alleges that Defendant accelerated the Loan on an unspecified date. (*Id*., PageID# 8 ¶ 37).

On July 15, 2020, the Cuyahoga County Court of Common Pleas entered a judgment against Schmitt in the foreclosure proceedings. (*Id*., PageID# 9 ¶ 43). The sale of Plaintiff's property was cancelled in November 2020 due to Plaintiff's bankruptcy filing. (R. 16, PageID# 138).[1]

---

[1] Defendant cites to the foreclosure action docket in *FCO Resi REO, LLC v. Desiree M Schmitt a.k.a. Desiree Schmitt a.k.a. Desiree Michelle Schmitt, et al.*, Case No. CV 17 883909, of which the Court takes judicial notice.

C. Plaintiff's Bankruptcy and Loan Late Fees

On November 6, 2020, Plaintiff filed a petition under Title 11, Chapter 13 in the United States Bankruptcy Court of the Northern District of Ohio. (R. 1, PageID# 9 ¶ 44; R. 16-1, PageID# 153). Schmitt alleges that on January 11, 2021, the assignee of the Loan, through SNSC, filed a Proof of Claim (POC) in the bankruptcy proceedings. (R. 1, PageID# 9 ¶ 45; R. 1-6). The POC included 36 monthly entries between October 2017 and October 2020 for "Late Charge Assessments"—which Plaintiff alleges were improper—each in the amount of $49.82 (i.e., 5.000% of Plaintiff's modified required monthly payments). (R. 1, PageID# 9 ¶¶ 46–47; R. 1-6, PageID# 68–72). According to the POC, two of these monthly late charges were credited, so the total value of the remaining 34 late fee entries was $1,693.88. (R. 1, PageID# 9 ¶ 46; R. 1-6, PageID# 72). Plaintiff alleges that during the bankruptcy proceedings, Plaintiff was required to make payments to a bankruptcy trustee, who used those funds to pay Plaintiff's creditors, including Defendant. (R. 1, PageID# 10 ¶ 48).

In addition to the POC listing what Plaintiff alleges were improper late charges, Plaintiff claims that Defendant separately "demanded payment" of these late fees by sending periodic billing statements to Plaintiff. (*Id*. ¶ 49).

Plaintiff's bankruptcy proceedings terminated five days before she filed this action. (R. 1; R. 16-1, PageID# 156).

## II. Procedural Background

Plaintiff's Complaint alleges violations of the Fair Debt Collection Practices Act (FDCPA) and Ohio Residential Mortgage Lending Act (RMLA), and seeks relief pursuant to the

Declaratory Judgment Act. (R. 1, PageID# 13–17 ¶¶ 59–81).[2]

The Complaint presents individual allegations from Plaintiff, and also seeks to establish a class of plaintiffs pursuant to Federal Rule of Civil Procedure 23, premised on the assertion that Plaintiff's Loan documents contain "substantially similar language" as the purported class members' documents, specifically that their "mortgage loans did not provide for the imposition of late fees or charges after acceleration of their mortgage loans." (R. 1, PageID# 1–2, 10–12 ¶¶ 7, 51–53).

Defendant has moved to dismiss the Complaint in its entirety (R. 16), to which Plaintiff filed an opposition (R. 21), and Defendant filed a subsequent reply (R. 23).

### III. Standard of Review

When ruling upon a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all the factual allegations contained in the complaint and construe the complaint in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *accord Streater v. Cox*, 336 F. App'x 470, 474 (6th Cir. 2009). Nonetheless, a court need not accept a conclusion of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955, 167 L.Ed. 2d 929.

---

[2] This action initially assigned to another district judge, was reassigned to the undersigned.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at 570, 127 S. Ct. 1955, 167 L.Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556, 127 S. Ct. 1955, 167 L.Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*., at 557, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

### IV. Discussion

The legal theory behind Plaintiff's claims is straightforward: Plaintiff alleges that Defendant improperly assessed Plaintiff late charges following the Loan's acceleration, in violation of the terms of the Loan and the provisions of the FDCPA and RMLA. The Court will consider each of Plaintiff's claims in turn.

#### A. FDCPA Claim

Plaintiff claims that Defendant violated FDCPA provision 15 U.S.C. § 1692f(1), which states: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1); (R. 1, PageID# 15–16 ¶¶ 66–71).

Congress passed the FDCPA "to address the widespread and serious national

problem of debt collection abuse by unscrupulous debt collectors." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014). The FDCPA "prohibits a wide array of specific conduct, but it also prohibits, in general terms, any harassing, unfair, or deceptive debt collection practice, which enables 'the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed.'" *Id*. (*quoting* S. Rep. No. 95-382, 1977 WL 16047, at *4). As the Sixth Circuit has explained, the FDCPA is an "extraordinarily broad" statute. *Id*. (*quoting Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008)).

When determining whether conduct is covered by the FDCPA, "the conduct is viewed through the eyes of the 'least sophisticated consumer.'" *Id*. (*quoting Barany-Snyder*, 539 F.3d at 333). This standard "recognizes that the FDCPA protects the gullible and shrewd alike while simultaneously presuming a basic level of reasonableness and understanding on the part of the debtor, thus preventing liability for bizarre or idiosyncratic interpretations of debt collection notices." *Id*. (*quoting Barany-Snyder*, 539 F.3d at 333).

As explained above, a debt collector violates the FDCPA where it collects—or attempts to collect—"any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Here, the parties disagree whether the late charges at issue were authorized by the Loan. (R. 16, PageID# 142–145; R. 21, PageID# 199–201, 205–206).

The Court must analyze the terms of the Loan pursuant to the tenets of Ohio contract law. Under Ohio law, "[c]ontract terms are generally to be given their ordinary meaning when the terms are clear on their face, and courts must apply the plain language

of the contract when the intent of the parties is evident from the clear and unambiguous language in a provision." *Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*, 524 F. Supp. 3d 762, 769 (S.D. Ohio 2021) (alteration in original) (internal quotation marks omitted) (*quoting CoMa Ins. Agency v. Safeco Ins. Co.*, 526 F. App'x 465, 468 (6th Cir. 2013)).

The parties do not dispute that the Note imposed a 5.000% late charge on any overdue amount of Plaintiff's required monthly Loan payments. (R. 1, PageID# 3 ¶¶ 13–14; R. 1-3, PageID# 27; R. 16, PageID# 143; R. 21, PageID# 199). The pertinent question, then, is whether the Loan provided for the collection of late fees following the acceleration of the Loan. (R. 16, PageID# 143; R. 21, PageID# 199–201).

As explained earlier, the Loan stated that if Plaintiff failed to timely make each required monthly payment, Plaintiff would be in default and subject to acceleration of the Loan. (R. 1-3, PageID# 27; R. 1, PageID# 3–4 ¶ 15). As Defendant points out, the Mortgage contained a provision (Paragraph 19) explaining that if the Loan has been accelerated, under certain conditions, Plaintiff would have the right to reinstate the Loan. That provision provides:

> **Borrower's Right to Reinstate *After Acceleration*.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time . . . . Those conditions are that Borrower: (a) *pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred* . . . . Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.

(R. 1-4, PageID# 42 (emphases added); R. 16, PageID# 143). In other words, following acceleration of the Loan, Plaintiff retained the right to reinstate the Loan if, *inter alia*, Plaintiff paid the Lender "all sums which then would be due under [the Mortgage] and

the Note as if no acceleration had occurred." (R. 1-4, PageID# 42).

Both Plaintiff and Defendant agree that this post-acceleration reinstatement of the Loan, if applicable, would involve Plaintiff paying for late charges that would have been owed for overdue monthly payments after the acceleration. (R. 16, PageID# 143; R. 21, PageID# 201). However, the parties disagree as to whether Paragraph 19, and the provisions of the Loan as a whole, authorized Defendant to assess upon Plaintiff post-acceleration late fees. Plaintiff contends that a necessary precondition to the assessment of late charges is Plaintiff's failure to remit her monthly payments. As a result, following the acceleration of the Loan, which she asserts eliminated all further monthly payments, Plaintiff could not have accrued any late charges. (R. 1, PageID# 4 ¶¶ 16–17; R. 21, PageID# 199–201). Defendant, on the other hand, asserts that because the Mortgage contemplates late fees being due as part of a reinstatement "as if no acceleration had occurred"—pursuant to Paragraph 19—that the lender's right to assess post-acceleration late fees was authorized pursuant to the Loan. (R. 16, PageID# 143).

Based on the plain language of the Loan, Defendant has the more convincing argument. As the District Court for the Southern District of Florida held in a case interpreting nearly identical language in a mortgage, the terms of the Loan state that a "condition precedent to reinstatement" is that Plaintiff "pay[] Lender all sums which then would be due under this Security Instrument and Note as if no acceleration had occurred." *Facey v. Carrington Mortg. Servs., LLC*, 2018 WL 7822710, at *3 (S.D. Fla. Dec. 13, 2018); *see also Patel v. Seterus, Inc.*, 2015 WL 13547010 (M.D. Fla. June 19, 2015). The "as if no acceleration had occurred" language provides a "noteholder the legal right to treat the note as if it had not been accelerated for purposes of reinstatement."

*Facey*, 2018 WL 7822710, at *4 (quoting *Patel*, 2015 WL 13547010, at *4). Therefore, as long as Plaintiff "retained the right to reinstate [the Loan], attempts to collect post-acceleration late fees" are not unlawful. *Id.* at *4 (*quoting Patel*, 2015 WL 13547010, at *4).

Plaintiff argues that the late charges associated with the reinstatement could only be collected if Plaintiff elected to reinstate the loan, which she never did. (R. 21, PageID# 201). However, this contention ignores the plain meaning of Paragraph 19—the issue is not whether Plaintiff elected to reinstate the Loan, but rather that the payment of post-acceleration late charges is a condition precedent to reinstatement, which Plaintiff retained the right to do if she satisfied that condition precedent; and, consequently, it was not improper to assess post-acceleration late fees to advise Plaintiff of the amounts she would need to pay if seeking reinstatement. Since the Loan authorized the imposition of post-acceleration late charges, Plaintiff's FDCPA claim fails.

B. RMLA Claim

Plaintiff next alleges that Defendant's purported assessment of improper late fees violated Ohio's RMLA.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Even if a Court can exercise supplemental jurisdiction pursuant to section 1367(a), subsection (c) provides that "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the claim raises a novel

or complex issue of State law . . . [or] the district court has dismissed all claims over which it has original jurisdiction." *Id.* §§ 1367(c)(1), (3). The Sixth Circuit has explained that in determining whether to exercise supplemental jurisdiction, the Court should also consider "judicial economy and fairness." *Fossyl v. Milligan*, 317 F. App'x 467, 473 (6th Cir. 2009).

The Court declines to exercise supplemental jurisdiction over Plaintiff's state law RMLA claim. As explained above, Plaintiff's federal FDCPA claim is subject to dismissal, which creates a "strong presumption against the exercise of supplemental jurisdiction" over the state RMLA claim. *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011). That is especially true, where, as here, there is minimal caselaw interpreting the recently amended RMLA provisions at issue.

## C. Declaratory Judgment

Finally, Plaintiff seeks relief under the Declaratory Judgment Act (DJA), requesting that the Court issue an order "declaring that Plaintiff's and Class Members' mortgage loans do *not* authorize the imposition of late fees after acceleration." (R. 1, PageID# 13–15 ¶¶ 59–65 (emphasis in original)). Plaintiff's DJA claim also fails, because as the Court has already held with respect to the FDCPA claim, Plaintiff's Loan authorized the imposition of post-acceleration late fees.[3]

## V. Conclusion

Defendant's Motion to Dismiss (R. 16) is hereby GRANTED for the foregoing reasons.

---

[3] Since all three of Plaintiff's claims fail for the foregoing reasons, the Court need not address Defendant's alternative arguments that Plaintiff's claims should be dismissed for failure to disclose the asserted claims in her previously filed Chapter 13 bankruptcy action (R. 23, PageID# 219–223) and lack of Article III standing (*id.*, PageID# 218–219).

Because Plaintiff's claims fail, she also cannot maintain the purported collective action.

Consequently, the action is dismissed with prejudice.[4]

      IT IS SO ORDERED.

                           s/ *David A. Ruiz*

                           David A. Ruiz
                           United States District Judge

Date: March 28, 2023

---

[4] Although Fed. R. Civ. P. 15 indicates leave to amend should be freely given when justice so requires, it is not applicable here because amendment of the federal claims would be futile and the Court declines to exercise jurisdiction over the state law claim. *See Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (*citing Ford v. Ford*, 371 U.S. 187 (1962)), *cert. denied*, 517 U.S. 1121 (1996).